IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARK DEW

    Plaintiff,

v.                                                                                        No: _____

REBECCA ASHFORD, Vice President of Student
Success and Enrollment Management at PELLISSIPPI STATE
COMMUNITY COLLEGE, in her individual
and official capacities;
JOHN DOE, Campus Security Officer, in his individual
and official capacities;
JAMES DOE, Campus Security Officer, in his
individual and official capacities;
LOU ANN VAHCIC, Account Clerk, in her individual
and official capacities;
MEMBERS OF THE TENNESSEE BOARD
OF REGENTS – Bill Haslam, Gregory Duckett,
Barry Gidcomb, John Farris, Tom Griscom,
Kevin Huffman, Julius Johnson, Jonas Kisber,
Fran Marcum, Paul Montgomery, Casey McCullum,
John Copeland, Richard Rhoda, Howard Roddy,
Emily Reynolds, Robert Thomas, Danny Varlan,
Each in their individual and official capacities

    Defendants.

## VERIFIED COMPLAINT

Comes now the Plaintiff, Mark Dew, and would respectfully state unto this Honorable Court as follows:

## Introduction

1. This is a civil rights action brought to vindicate the constitutional rights of Plaintiff, Mark Dew, whose First Amendment rights have been infringed by the Defendants' actions.

2. During the academic year of 2010 - 2011, officials of Pellissippi State Community College, ("PSCC") prevented Plaintiff Mark Dew from distributing free Christian literature peacefully on the Main Campus and from engaging in pure First Amendment activity by way of testifying about his Christian faith to fellow students. PSCC is a public community college organized and existing under the laws of the State of Tennessee, enabled under TCA §49-8-901 et seq., and governed by the Tennessee Board of Regents.

3. PSCC officials characterize Plaintiff's activity as solicitation, although Plaintiff seeks no contributions or remuneration for his activity, he simply seeks to engage in expression of religious belief and exercise the tenets of his faith by peacefully talking to fellow students about his religious beliefs.

4. PSCC officials hid and continue to hide behind the contrivance of solicitation in continuing to deny Plaintiff his First Amendment rights, which are extended to control state government actions through the Fourteenth Amendment.

5. PSCC officials, pursuant to a policy of the Tennessee Board of Regents, require Plaintiff, a student at PSCC, to apply fourteen business days (excluding weekends and holidays) in advance and pay thirty dollars per day for the privilege of exercising his First Amendment right to free speech on his own college campus. Moreover, Defendants selectively apply this policy to Plaintiff because his speech includes "preaching," singling out expression of his religious views for these burdensome requirements while permitting other students to communicate with one another freely.

## Jurisdiction & venue

6. This court has subject matter jurisdiction over this case under 28 USC §1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 USC §1343 (a) (3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 USC §1343 (a) (4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 USC §1983, which provides a cause of action for the protection of civil rights; under 28 USC §2201 (a), to secure declaratory relief; and under 28 USC §2202, to secure preliminary and injunctive relief and damages.

7. The venue in this action is proper within this judicial district and division pursuant to 28 USC §1391 (b), in that (i) the Defendants are situated within this judicial district, and (ii) a substantial part of the claims asserted by Plaintiff arose within this judicial district and division.

## Parties

8. Plaintiff Mark Dew is a 44-year-old student at PSCC. Plaintiff attends class at the campus located off Pellissippi Highway in Knox County, Tennessee, known as the Pellissippi Campus or Main Campus. He is a citizen and resident of Knoxville, Tennessee Plaintiff presently expects to be at least a part-time student at PSCC in the future. Plaintiff is a Christian.

9. The Members of the Tennessee Board of Regents, Bill Haslam, Gregory Duckett, Barry Gidcomb, John Farris, Tom Griscom, Kevin Huffman, Julius Johnson, Jonas Kisber, Fran Marcum, Paul Montgomery, Casey McCullum, John Copeland, Richard Rhoda, Howard Roddy, Emily Reynolds, Robert Thomas, and Danny Varlan, are responsible for the governance of Pellissippi State Community College and have enacted and maintained policies challenged here. They are each sued in their individual and offical capacities.

10. Defendant Rebecca Ashford is, and was at all times relevant to this Complaint, Vice President of Student Success and Enrollment Management at PSCC. Her duties include, among others, formulating and applying student conduct policy, policy governing speech activities of students on campus, and policy on use of campus property and facilities. She is sued in her individual and official capacities.

11. As further pleaded below, Defendant Ashford relies upon the policies of The Tennessee Board of Regents in formulating and applying PSCC-specific student conduct policy, policy governing speech activities of students on the PSCC Main Campus, and policy on use of campus property and facilities at the PSCC Main Campus.

12. John Doe is, and was at all times relevant to this Complaint, a uniformed officer with the PSCC Safety and Security office on the Main Campus. He is sued in his individual and official capacities. John Doe is a fictitious name, as Plaintiff is currently unaware of the officer's actual name.

13. James Doe is, and was at all times relevant to this Complaint, a uniformed officer with the PSCC Safety and Security office on the Main Campus. He is sued in his individual and official capacities. James Doe is a fictitious name, as Plaintiff is currently unaware of the officer's actual name.

14. LouAnn Vahcic is an Account Clerk employed by Pellissippi State Community College. She implemented PSCC and Tennessee Board of Regents policies regulating Plaintiff's speech. She is sued in her individual and official capacities.

### Defendants' Unconstitutional Actions Toward Plaintiff

15. During the 2010 fall semester at PSCC, Plaintiff sought to engage in discussion of his religious beliefs and distribution of free literature about his faith when he was on the PSCC campus.

16. When engaging in his First Amendment free speech and exercise of religious belief activities, Plaintiff took up locations in the courtyard of the PSCC campus. Plaintiff was not an obstruction to the traverse of students across the campus. The courtyard is, however, an effective location to communicate Plaintiff's religious beliefs, because students commonly congregate and talk to one another in the courtyard about a wide variety of topics. Engaging in speech in the courtyard does not interfere with classroom activities or PSCC's educational mission.

17. Plaintiff uses no amplification and he does not use offensive language. If someone declines to accept his literature, or declines to speak to Plaintiff, he will respond with an encouraging statement such as, "Have a nice day"; or "God bless you."

18. In early October 2010, while Plaintiff was handing out literature and speaking about his faith, a uniformed officer of the PSCC Safety and Security office approached Plaintiff, and expressed concern about Plaintiff's activity, stating that PSCC had a "no soliciting" rule on campus.

19. After a brief conversation, in which Plaintiff advised that Plaintiff was not selling anything, and that Plaintiff was a student, the officer advised that Plaintiff could continue to hand out free Christian literature, as long as he did not "preach." Furthermore, the officer admonished Plaintiff that if the officer received a complaint, "[he] would have to act."

20. Plaintiff continued to share his faith and hand out literature. Later in October 2010, while Plaintiff was engaging in this First Amendment protected activity, a different uniformed officer of the PSCC Safety and Security office, John Doe, approached Plaintiff and commanded him to stop.

21. John Doe stated that he had received an unspecified complaint about Plaintiff's activities, and one complaint was enough to shut Plaintiff down.

22. Upon inquiry by Plaintiff, John Doe stated that the reason Plaintiff could not share his faith and and distribute free Christian literature was because of the "no soliciting" policy of PSCC.

23. Plaintiff stated that he was not selling anything, but John Doe would not relent in requiring Plaintiff to cease his activities.

24. Shortly after his encounter with John Doe, Plaintiff arranged for a meeting with Rebecca Ashford, the Vice President of Student Assistance and Enrollment Management, to seek her counsel on the rights of students at PSCC to witness, speak about matters of faith and hand out free Christian literature.

25. At this meeting in late October or early November, 2010, Rebecca Ashford advised Plaintiff she would get back to Plaintiff on his rights.

26. At or around the time of the meeting with Rebecca Ashford, Plaintiff spoke with a leader of the Pellissippi Collegiate Ministry ("PCM"), a PSCC-sanctioned student organization dedicated to the evangelism of the Christian faith, about his experience with the officer and was advised that he could consider himself sponsored by the PCM for the purpose of handing out religious literature and speaking about his faith on the PSCC Main Campus when PCM could obtain permission from PSCC to hold functions on campus.

27. With the understanding that Plaintiff was sponsored by PCM for his activities of religious expression and religious exercise, Plaintiff was able to speak about his faith and hand out free literature about his faith on a few occasions, but not as frequently as he desired because PCM was only approved by PSCC to hold functions no more than once per week.

28. Rebecca Ashford arranged for a second appointment with Plaintiff.

29. At this second meeting, Rebecca Ashford advised Plaintiff that he could not as an individual speak about his faith or distribute free Christian literature.

30. Rebecca Ashford advised Plaintiff that even though he was officially sponsored by PCM, he could not speak about his faith or distribute literature on an ad hoc basis, but only during PSCC approved PCM activities, which generally occurred weekly on Wednesdays.

31. Rebecca Ashford advised Plaintiff that the limitations on Plaintiff's activities were due to the PSCC policy against solicitation.

32. Rebecca Ashford advised Plaintiff that he could also go through the application process and pay a fee, paid by any non-student who wished to appear on the campus for purposes of solicitation, and be approved to engage in evangelism and distribution of free Christian literature, under the regulation of the administration.

33. A copy of the application provided to Plaintiff by Rebecca Ashford is attached as <u>Exhibit A.</u>

34. Upon inquiry by Plaintiff, Rebecca Ashford implied that if he continued to speak about his faith and distribute free Christian literature outside of the parameters she established pursuant to PSCC and Tennessee Board of Regents policies, he would be subject to discipline.

35. For the remainder of the Fall 2010 semester, Plaintiff continued to share his faith and hand out free Christian literature only under the parameters established by Rebecca Ashford.

36. In the spring semester of 2011, Plaintiff decided to attempt to speak about his faith and distribute free Christian literature to see if PSCC's policy would be the same during the spring semester, due to his belief that he was not involved in solicitation when he discussed his faith and distributed free Christian literature.

37. During the first week of school in the Spring Semester 2011, Plaintiff resumed his position in the courtyard of the PSCC Main Campus and began speaking about his faith and handing out free Christian literature.

38. Shortly after beginning his free speech and free exercise activities, yet another uniformed officer of the PSCC Safety and Security office, James Doe, approached Plaintiff from another part of the campus.

39. James Doe yelled at Plaintiff as he approached and forcefully commanded Plaintiff to cease his activities.

40. Plaintiff inquired about what campus rule prevented Plaintiff's activities.

41. James Doe advised that PSCC has a "no solicitation" policy that prohibited him from speaking about his faith and distributing his free literature.

42. On February 9, 2011, Plaintiff's counsel sent a letter to Defendant Ashford explaining that her restrictions violated Plaintiff's First Amendment rights. A copy of this letter is attached as Exhibit B.

43. On February 23, 2011, Kae Carpenter, Associate General Counsel to the Tennessee Board of Regents, responded to Plaintiffs' counsel's letter, stating that Pellissippi State's policy of requiring its own students to apply and pay for the privilege of engaging in non-commercial speech on campus was reasonable and viewpoint neutral. A copy of this letter is attached as Exhibit C.

44. The Tennessee Board of Regents has promulgated policy 3:02:02:00, a Policy on Use of Campus Property and Facilities. This policy permits Tennessee public colleges and universities, including PSCC, to charge both students and non-students for the use of campus facilities for any free speech activities. This policy is attached as Exhibit D.

45. Policy 3:02:02:00 also requires anyone, including individual students, desiring to use campus facilities to engage in any First Amendment protected activities anywhere on campus to submit an application fourteen business days in advance (weekends and holidays excluded). Officials may take up to seven business days to evaluate the request and notify the applicant whether approval has been granted.

46. Defendants have interpreted and applied Policy 3:02:02:00 to require Plaintiff to submit an application to speak about his faith and distribute free literature on his campus fourteen business days in advance and to pay a fee at a rate determined by Defendants.

47. Plaintiff has no certainty that Pellissippi Collegiate Ministries will continue to permit him to speak during their weekly events and the organizers of Pellissippi Collegiate Ministries have no assurance that PSCC will continue to permit them to hold weekly events where Mr. Dew may speak. Indeed, Defendants retain unbridled discretion to permit PCM to reserve space for regular events. Moreover, PCM may decline to hold weekly events or prohibit him from speaking during their events for any reason, including any disagreement with his views, or no reason at all at any time.

48. Plaintiff registered to be a student during the summer 2011 academic session.

49. Under protest, Plaintiff completed a facility usage application, attached as Exhibit E, so that he could share his faith with his fellow students and distribute free Christian literature during one of the first days of the summer 2011 academic session.

50. Defendants required Plaintiff to pay a $30 "rental fee" to speak about and distribute literature about his faith on June 8, 2011, as he otherwise would have been unable to participate in his expressive activity on campus. Defendants did not explain the basis for the calculation of the $30 fee charged to Plaintiff.

51. A copy of the e-mail dialogue between Plaintiff and Defendant Vahcic which communicates the requirement to pay a fee in advance of his speech activity is attached as Exhibit F. Plaintiff has paid this fee.

52. Defendants' treatment of Plaintiff notwithstanding, other individual students at PSCC can often be seen talking to one another about any number of topics and handing each other written information in the same area of the campus where Plaintiff seeks to exercise his First Amendment rights.

53. Plaintiff avers that he does not give up his First Amendment rights upon entering the PSCC campus, given that he is a student and otherwise has a right to be on the PSCC campus.

54. Plaintiff has a First Amendment right to initiate conversations that have religious content, express his religious beliefs, and give away free literature related to his beliefs without the requirement to pay a rental fee and complete a facility usage application.

55. Plaintiff avers that he was not engaged in solicitation.

56. Plaintiff avers that the basis for Defendants' restriction upon Plaintiff was and continues to be a content-based and viewpoint-based suppression of Plaintiff's personal First Amendment rights.

57. Plaintiff avers that Defendants' reliance on a no-solicitation policy to thwart Plaintiff's First Amendment-based activities is a subterfuge and mere contrivance.

## Harm to Plaintiff

58. Plaintiff desires to share his religious beliefs with his fellow students on the PSCC campus frequently, as often as daily, and to provide written tracts to his fellow students that discuss his religious beliefs.

59. Under Defendants' interpretation and application of PSCC and Tennessee Board of Regents policies toward Plaintiff, Plaintiff is forbidden from engaging in these First Amendment protected activities in any public area on the PSCC campus outside of weekly PCM activities, unless Plaintiff applies in advance and pays a solicitation fee for every instance of his exercise of First Amendment rights.

60. Plaintiff has been prevented from exercising his First Amendment rights on numerous days of the past academic year and will continue to be denied these rights, unless he pays a rental fee that appears to be $30 per day. Payment of such a fee is a substantial burden on Plaintiff.

61. Defendants' prohibition of Plaintiff's faith-related speech and free Christian literature distribution as an individual who otherwise had license to be on the PSCC campus deprived Plaintiff of unrecoverable opportunities to communicate his point of view to others, thereby irreparably interfering with his constitutional rights, inconveniencing him and resulting in loss of time, and causing him mental and emotional harm.

62. Defendants' unconstitutional prohibitions and policies regulating student campus expressive activities, including literature distribution have caused and are continuing to cause a chill on the speech of Mark Dew and others who have been, or are students at PSCC.

63. Defendants' unconstitutional prohibitions and policies regulating students' exercise of religion on campus have caused and are continuing to cause a chill on the free exercise of religion by Mark Dew and other Christians who have been or are students at PSCC.

64. Unless and until Defendants' unconstitutional limitations on speech and religious exercise are enjoined, Plaintiff will suffer and continue to suffer irreparable injury to his constitutional rights.

65. Plaintiff has no adequate or speedy remedy at law to redress his mistreatment and chill under Defendants' constitutionally infirm policies limiting religious speech and religious exercise.

66. Plaintiff has suffered compensatory damages in the amount of $30, through the PSCC's unconstitutional requirement that Plaintiff pay $30 to engage in First Amendment activities.

### Allegations of Law

67. All acts alleged herein of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law, including the application of Tennessee Board of Regents and PSCC's restrictions on expressive activities and religious exercise; and the enactment,

implementation, and enforcement of the various PSCC and Tennessee Board of Regents policies challenged herein, and all related regulations, customs, policies, and usages of PSCC and the Tennessee Board of Regents discussed herein.

68. Each of the Defendants has had and continues to have involvement in the deprivation of Plaintiff's freedom of speech and free exercise of religion on campus; and each of such Defendants has acted and continues to act to deprive Plaintiff of these rights.

69. Defendants' purported policies, actions and threats to discipline Plaintiff if he engages in these traditionally protected activities of personal evangelization and distribution of free Christian literature, as set forth above, do not serve any legitimate, compelling state interest.

70. Defendants' actions and policies alleged above would chill the person of ordinary firmness from engaging in speech on matters of controversy as set forth herein.

71. Defendants' imposition of a rental fee for a student to engage in personal First Amendment expressive activity and exercise of religion constitutes a substantial burden and discourages Plaintiff and any person of ordinary firmness from engaging in speech activities, or in exercise of religion.

72. Defendants' imposition of a requirement that Plaintiff apply for permission to engage in speech and literature distribution on campus at least fourteen business days in advance of such activity prevents Plaintiff and similarly situated PSCC students from engaging in spontaneous speech activities and discourages Plaintiff and any person of ordinary firmness from engaging in speech activities.

73. Defendants have deprived and continue to deprive Plaintiff of his clearly established rights under the United States Constitution, as set forth below.

## Causes of Action

74. Plaintiff hereby incorporates by reference all foregoing allegations as if set forth fully herein.

## First Amendment – Free Speech

75. Defendants have prohibited Plaintiff from speaking with fellow students about his religious beliefs and distributing literature to them about his beliefs unless he applies fourteen business days in advance and pays a substantial fee, to wit $30, to exercise these First Amendment rights.

76. Defendants require Plaintiff to seek the approval of an officially registered student group in order to exercise his First Amendment rights without charge, subjecting him to a private student group's unbridled discretion in authorizing his exercise of First Amendment rights on campus.

77. Defendants have permitted and continue to permit other students to speak to one another without charge on campus, including in the same area where Plaintiff seeks to exercise his First Amendment rights, but have singled out Plaintiff's "preaching" for prohibition, in discrimination on the basis of his religious content and viewpoint.

78. Defendants retain unbridled discretion to approve or deny permission to PCM and other registered student groups to engage in speech and literature distribution on campus, and in practice have not permitted PCM to do so more than once weekly, thus restricting Plaintiff from being able to engage in his activities more than once per week.

79. No compelling or even legitimate state interest justifies the Defendants' infringements of Plaintiff's exercise of his First Amendment rights.

80. Defendants' policies and practices, requiring Plaintiff and similarly situated students to apply for permission to speak and distribute literature anywhere on campus at least fourteen business days in advance and to pay a $30 fee for the exercise of their rights is not a reasonable time, place and manner restriction on the exercise of Plaintiff's First Amendment rights.

81. Defendants' actions have therefore violated and continue to violate Plaintiff's First Amendment right of religious free speech.

## First Amendment – Free Exercise

82. It is Plaintiff's sincerely held religious belief that he must share his faith with others.

83. Defendants have prevented Plaintiff from "preaching" or otherwise sharing his faith with others on campus unless he pays a fee or receives the sponsorship of a student group, burdens not placed on any other students on campus who speak to one another on any number of topics.

84. Defendants' application of their policies are neither neutral nor generally applicable but instead are targeted at Plaintiff's speech because of its religious character.

85. The Defendant's prohibition of Plaintiff from sharing his faith with his fellow students on campus is a severe burden on Plaintiff's free exercise of his religion.

86. No compelling state interest justifies the Defendants' infringement of Plaintiff's First Amendment right to exercise the tenets of his religious belief.

87. Defendants' actions have therefore violated and continue to violate Plaintiff's First Amendment right to the free exercise of his religious beliefs.

## **Prayer for Relief**

A. Adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

B. Pursuant to 28 U.S.C. § 2201, enter a Declaratory Judgment stating that Defendants' restrictions violate the First and Fourteenth Amendments to the United States Constitution, by its contrived "no solicitation" policy, and discriminatory treatment of Plaintiff,

including their restrictions on Plaintiffs' efforts to distribute literature on campus and to interfere with Plaintiffs' evangelism efforts, unless Plaintiff in advance files an application and pays a fee;

C. Pursuant to 28 U.S.C. § 2201, enter a Declaratory Judgment stating that Defendants' policies governing Plaintiff and other students at PSCC, as alleged above, on their face and as applied to Plaintiff, violate the First and Fourteenth Amendments to the United States Constitution;

D. Pursuant to 28 U.S.C. § 2202, FED. R. CIV. P. 65, and 42 U.S.C. § 1983, preliminarily and permanently enjoin Defendants, their agents, servants, employees, officials, or any other person acting in concert with them or on their behalf, from enforcing against Plaintiff or any other students the unconstitutional policies identified herein, without a condition of bond or other surety being required of Plaintiffs, such that Plaintiff will no longer be under threat of discipline or criminal punishment for exercising his First Amendment rights to distribute free Christian literature and speak to others about his Christian faith;

E. Award nominal damages to vindicate the constitutional injuries suffered by Plaintiff, to be paid by those Defendants named in their individual capacities;

F. Award actual damages, including but not limited to the $30 rental fee, to Plaintiff in an amount to be determined by the finder of fact in accordance with the proof, plus interest at the legal rate until paid;

G. Award Plaintiff's costs and expenses of this action, including a reasonable attorneys' fee award, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H. Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted this 9th day of June, 2011.

s/W. Andrew Fox
                                        W. Andrew Fox, BPR #017356
                                        Attorney for Plaintiff
                                        Gilbert & Fox
                                        Suite 540 Two Centre Square
                                        625 Gay Street
                                        Knoxville, TN 37902
                                        P: (865)525-8800
                                        F: (865)525-8200


                                        *Casey Mattox, VSB#47148
                                        Alliance Defense Fund
                                        Attorney for Plaintiff
                                        801 G Street NW, Ste. 509
                                        Washington, DC 20001
                                        P: (202) 393-8690
                                        F: (202) 347-3622


                                        *Bryan H. Beauman, KY Bar No. 869698
                                        Alliance Defense Fund
                                        Attorney for Plaintiff
                                        PO Box 779
                                        Paris, KY 40362
                                        P: (859) 340-1127
                                        F: (480) 444-0028

* Motion for admission pro hac vice pending submission.

# OATH

STATE OF TENNESSEE
COUNTY OF KNOX

I, Mark Dew, after being duly sworn, according to law, hereby make oath that I have read the foregoing Verified Complaint; that the statements contained therein are true to the best of my knowledge, information and belief.

_____
Mark Dew

Sworn to and subscribed before me on this 27 day of May, 2011.

_____          My commission expires: 1-5-15
NOTARY PUBLIC